**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| American Safety Insurance Co., ) | |
| ) | |
| Plaintiff, ) | C.A. No.: 2:15-cv-3266-PMD |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Page's Thieves Market, Inc., and ) | |
| James A. Parker, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the Court on Plaintiff American Safety Insurance Co.'s motion for summary judgment (ECF No. 16), Defendant Page's Thieves Market, Inc.'s motion to exclude American Safety's expert witness (ECF No. 18), Defendant James Parker's motion for leave to file a sur-reply (ECF No. 37), and American Safety's motion to exclude the defense's expert witness (ECF No. 39).  For the reasons stated herein, the Court grants summary judgment for American Safety, finds the two expert witness motions moot, and denies Parker's motion.

**BACKGROUND**

This is a declaratory judgment action arising out of injuries that Parker suffered while working for Page's in 2013.  Parker has sued Page's in state court for his injuries.  American Safety asks this Court to rule it has no duty to defend or indemnify Page's, its insured, in that lawsuit.

Page's is auction business in Mount Pleasant, South Carolina.  For several years, Page's purchased liability insurance from American Safety.  The policy it bought for 2013 provides that American Safety "will pay those sums that [Page's] becomes legally obligated to pay as damages because of 'bodily injury' . . . *to which this insurance applies*." (Compl., Ex. C, Ins. Policy, ECF

No. 1-3, at 4 (emphasis added)).  The insurance "does not apply to" several types of bodily injury, including injuries sustained by "[a]n 'employee' of [Page's] arising out of and in the course of: (a) Employment by [Page's]; or (b) Performing duties related to the conduct of [Page's] business."  (*Id.* at 5.)

The sole issue presented in this case is whether the policy's employee exclusion applies.  The policy states that the term "'[e]mployee' . . . does not include a 'temporary worker.'" (Compl., Ex. C, Ins. Policy, ECF No. 1-3, at 16.)  It then defines "temporary worker" as "a person who is furnished to [Page's] to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions."  (*Id.* at 18.)   The parties dispute whether Parker was a temporary worker or an employee.

Parker worked for Page's from 2010 to 2013.  He performed a variety of tasks, including yard work, merchandise delivery and pickup, and communication with customers.  Parker did not, however, work scheduled hours or a set number of hours per week or month.  Rather, in 2012 and 2013, and possibly in other years, Page's paid him a monthly retainer and called him in to work when it needed his "extra assistance."  (*E.g.*, Pl.'s Mot. Summ. J., Ex. 7, Parker's Answers Pl.'s Interrogs., ECF No. 16-8, at 5.)  When he worked, Page's paid him by the hour.  The hours he worked on a given day varied "depending on the nature and difficulty of the job requested of him."  (*Id.*)  The record indicates Parker worked at least 1,243 hours in 2012 and 1,080 hours in the first nine months of 2013.

Parker's work arrangement with Page's continued until September 26, 2013, when Page's instructed Parker to cut down a tree on its property.  As he was performing that task, the tree fell onto him, crushing his back and paralyzing him.

2

In June 2015, Parker filed a lawsuit in state court alleging Page's negligence caused his injuries. American Safety retained counsel to defend Page's, but it also reserved its right to later deny coverage based on the policy's employee exclusion.

## PROCEDURAL HISTORY

American Safety filed this action in August 2015. As mentioned above, it seeks a declaratory judgment that it has no duty to defend or indemnify Page's for Parker's injuries because Parker was Page's employee. Page's and Parker both filed answers, and Parker also asserted a counterclaim seeking a declaratory judgment that Page's has coverage because he was merely a temporary worker when he was injured.

Following discovery, American Safety moved for summary judgment. Page's and Parker each filed two responses in opposition. Additionally, Page's moved to exclude expert evidence on which American Safety relied in its summary judgment motion. American Safety filed a response to Page's motion, as well as replies to the defendants' briefs opposing summary judgment. Finally, Parker moved for leave to file a sur-reply to American Safety's summary judgment reply brief. The motions are therefore ripe for consideration.

## ANALYSIS

### I.     Threshold Matters

Before the Court discusses the substance of American Safety's motion, it first addresses several issues affecting what materials it has considered in its analysis of that motion.

First, one of the materials American Safety has submitted in support of its summary judgment motion is an affidavit from its expert witness. Likewise, Page's and Parker base their opposition to summary judgment in part on a report from their shared expert witness. Page's has moved to exclude American Safety's expert, and vice versa. In the Court's view, American

3

Safety is entitled to summary judgment even without its expert's affidavit, and the defense expert's report does not create a genuine issue of material fact. Accordingly, the Court need not rule on either motion. Instead, assuming *arguendo* that the defense has the better argument on both motions, the Court has considered the defense expert's report, but not American Safety's expert's affidavit, in its summary judgment analysis.[1]  The motions to exclude are therefore moot.[2]

Second, in an earlier order, this Court gave Page's and Parker additional time to depose American Safety's expert witness and file supplemental briefs opposing summary judgment that related only to the expert's deposition testimony. The briefs were to be filed by July 25, 2016, but neither Page's nor Parker met that deadline. Rather, Page's and Parker filed their supplemental briefs on August 4. Because they did not seek extensions of their filing deadline, the Court will not consider their briefs. *See* Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . *on motion* made after the time has expired if the party failed to act because of excusable neglect." (emphasis added)).[3]  Consequently, the Court also will not consider American Safety's August 9 reply to those supplemental briefs.

## II.     Summary Judgment

As explained herein, the Court finds that undisputed facts in the record demonstrate Parker was not a temporary worker.

---

1. The Court recognizes that, practically speaking, this is no different than granting Page's motion and denying American Safety's motion. The Court emphasizes, however, that it expresses no opinion on any of the arguments that the parties have made for excluding the experts.

2. Parker has moved for leave to file a sur-reply addressing whether he and Page's timely disclosed their shared expert. American Safety initially asserted untimeliness as one basis for excluding the defense's expert, but it later withdrew that argument. Because the question of whether Parker and Page's timely disclosed their expert is not before the Court, there is no need to hear from Parker on that issue. Thus, the Court denies Parker's motion.

3. The Court sees nothing in the supplemental responses themselves demonstrating excusable neglect.

4

### A.      Legal Standard

To grant a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990). "[I]t is ultimately the nonmovant's burden to persuade [the court] that there is indeed a dispute of material fact. It must provide more than a scintilla of evidence—and not merely conclusory allegations or speculation—upon which a jury could properly find in its favor." *CoreTel Va., LLC v. Verizon Va., LLC*, 752 F.3d 364, 370 (4th Cir. 2014) (citations omitted). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

### B.      Discussion

The parties have focused their arguments exclusively on whether Parker was a temporary worker under the insurance policy. They appear to agree, then, that Parker's status is dispositive.[4] Moreover, although the policy's definition of "temporary worker" includes three categories—a person "substitut[ing] for a permanent 'employee' on leave," a person "meet[ing] seasonal . . . workload conditions," and a person "meet[ing] . . . short-term workload conditions"—the parties have discussed only whether Parker fits the last of those alternatives.

---

4.   For example, American Safety has not argued that even if Parker was a temporary worker, one of the policy's other exceptions would bar coverage. Likewise, Page's and Parker have not asserted that even if Parker was not a temporary worker, the employee exception does not apply for some other reason.

5

Thus, the question before the Court is narrow: was Parker a person furnished to Page's to meet short-term workload conditions?

South Carolina law governs this dispute. Both sides rely principally upon the South Carolina Court of Appeals' recent decision in *Canal Insurance Co. v. National House Movers, LLC*. *Canal Insurance* involved a liability insurance policy that excluded coverage for employee injuries and that had definitions of "employee" and "temporary worker" materially identical to the ones at issue here. *See* 777 S.E.2d 418, 420 (S.C. Ct. App. 2015). Tracking the language of the policy's "temporary worker" definition, the Court of Appeals stated that determining whether an injured putative employee is a temporary worker is "a two-step analysis": a court must determine (1) whether the insured hired the person to meet "short-term workload conditions," and, if so, (2) whether the person was "furnished to" the insured. *Id.* at 421.

In *Canal Insurance*, the Court of Appeals concluded the injured worker's relationship to the insured satisfied both steps of that analysis. 777 S.E.2d at 421. Here, however, the record before the Court does not establish even the first step. Records and discovery responses from Page's and Parker show that Parker worked for Page's recurrently for at least two years before his injury.[5] In 2012 and 2013, and possibly before that, Page's paid Parker a monthly retainer to secure Parker's availability to work as needed. Page's would call him into work whenever it had tasks for him to perform, such as yard work, merchandise pickup and delivery, moving items at the store, general maintenance work, interacting with customers, and other odd jobs. The breadth of those tasks required Parker to spend a significant amount of time working for Page's. The record indicates he worked at least 1,243 hours—an average of nearly 24 hours per week—in 2012 and 1,080 hours—an average of nearly 28 hours per week—in the nine months of 2013

---

5.   The record shows Parker worked for Page's in 2010, 2011, 2012, and 2013. However, because the record does not clearly indicate how much time Parker worked in 2010 or 2011 and whether he was on retainer during those years, the Court has not taken those years into account.

preceding his accident. Someone who is paid regularly and continuously for at least two years to be available to work on demand, and who works an average of more than twenty-four hours per week during those two years, is not fulfilling short-term workload conditions. He is a part-time employee who works irregular hours instead of a set schedule.

In *Canal Insurance*, the court concluded that the injured worker was employed to meet short-term workload conditions. 777 S.E.2d at 422. There, the worker testified he helped out only "sporadically," when the insured needed "an extra hand" and one of its employees called him to offer work; if the insured did not need him for a particular job, the injured worker would not get a call. *Id.* at 421. Page's and Parker contend their relationship is indistinguishable from the facts of *Canal Insurance*. In support of that that contention, they have submitted affidavits and discovery requests stating that Parker worked sporadically when an extra hand was needed, and that if Page's did not call him, he did not go to work. However, the *Canal Insurance* reached its short-term workload conclusion because the nature of the injured worker's employment was consistent with how Black's Law Dictionary defines "temporary," which is "[l]asting for a time only; existing or continuing for a limited (usu. short) time; transitory." *Id.* at 422 n.4 (quoting *Temporary*, *Black's Law Dictionary* (10th ed. 2014)). In contrast, the record in this case shows that during the two consecutive years preceding Parker's injury, Page's needed him to work quite often—indeed, so much that it put him on retainer. Parker's employment history cannot accurately be described as sporadic, transitory, or lasting for a limited time. Rather, it was ongoing, frequent, and on-demand. Further, in *Canal Insurance*, the insurance company conceded that the injured worker was employed "only when short-term working conditions . . . required extra help." *Id.* at 421–22. The Court of Appeals relied heavily on that concession. *Id.* at 422. Here, however, American Safety has made no such concession and

7

instead argues strenuously that Parker was a permanent employee.[6] Thus, although *Canal Insurance* provides the analytical framework for this case, its facts differ greatly from those presented here.

Page's next contends that Parker was only meeting short-term workload conditions because "[i]n every instance, he appeared at Page's to carry out small, short-term tasks." (Page's Resp. Opp'n Pl.'s Mot. Summ. J., ECF No. 31, at 4.) Likewise, Parker argues he was a temporary worker because he "was only called to complete short-term tasks." (Parker Resp. Opp'n Pl.'s Mot. Summ. J., ECF No. 30, at 6.) The Court cannot accept a construction of "short-term workload conditions" rooted in the completion times of individual tasks. Nearly every permanent job is, in a sense, a series of discrete tasks that do not take long to perform. The defense's construction would categorize virtually all permanent employees as temporary workers, a result that would be at odds with the policy's definition of "temporary worker." As the *Canal Insurance* court noted, what makes something temporary is that it lasts only for a limited time. *See* 777 S.E.2d at 422 n.4. In keeping with that conventional understanding of "temporary," the lack of permanent employment is the defining characteristic of the three types of people who the policy defines as temporary employees. First, a substitute's work ends when the permanent employee returns from leave. Second, by definition, a seasonal workload is tied to, and therefore ends after, a specific span of time (such as summer or tax season). Finally, the "term" in "short-term" means "a fixed or limited period for which something . . . lasts or is intended to last."     *Term*,     Oxford     Dictionaries     Online,

---

6.   In their discovery responses and in affidavits, Page's and Parker state directly that Parker worked only "when short-term working conditions existed." (*E.g.*, Pl.'s Mot. Summ. J., Ex. 7, Parker's Answers Pl.'s Interrogs., ECF No. 16-8, at 5.) However, those statements are legal conclusions, which carry "no weight for the purposes of summary judgment." *Wachovia Bank, N.A. v. Fed. Reserve Bank of Richmond*, 338 F.3d 318, 323 n.5 (4th Cir. 2003); *see also* 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2738 (3d ed. West 2016) ("Thus, ultimate or conclusory facts and conclusions of law . . . cannot be utilized on a summary-judgment motion."). Accordingly, those statements play no role in the Court's analysis.

http://www.oxforddictionaries.com/us/definition/american_english/term (last visited Aug. 15, 2016). Here, no evidence suggests Parker's working relationship with Page's possessed that contemplated lack of permanence. To the contrary, the persistent payment of the monthly retainer for at least two years, as well as the numbers of hours Parker worked in 2012 and 2013, demonstrate that Parker's employment was decidedly ongoing and unending in nature.

Parties to a contract are, of course, free to define their contract's terms however they please. However, absent evidence Page's and American Safety intended for "short-term" to have the unusual meaning that Page's and Parker now offer, the Court must reject that construction. *See State Auto Prop. & Cas. Co. v. Brannon*, 426 S.E.2d 810, 811 (S.C. Ct. App. 1992) (stating courts "should not torture the meaning of policy language in order to extend or defeat coverage that was never intended by the parties" (citation omitted)).

Finally, Page's and Parker contend that "short-term" is ambiguous and therefore it must be construed to provide coverage for Parker's injuries. The Court disagrees. An insurance policy's term "'is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages[,] and terminology as generally understood in the particular trade or business.'" *Canal Ins. Co.*, 777 S.E.2d at 421 (quoting *Hawkins v. Greenwood Dev. Corp.*, 493 S.E.2d 875, 878 (S.C. Ct. App. 1997)). Neither Page's nor Parker has identified any multiple meanings that "short-term" might reasonably possess. Rather, they simply argue that they have accurately interpreted "short-term" while American Safety has not. "Ambiguity does not exist merely because the parties cannot agree on a provision's meaning . . . ." 2 Steven Plitt et al., *Couch on Insurance* § 21:14 (3d ed. West 2016); *see also Cramer v. Nat'l Cas. Co.*, No. 5:14-cv-3857-JMC, 2016 WL 3162232, at *3

9

(D.S.C. June 7, 2016) (holding insurance policy's provision was unambiguous under South Carolina law, even though parties disagreed over the provision's meaning and one party argued the provision was ambiguous).[7]

In sum, seeing no genuine issue of fact relating to whether Parker was employed to meet only short-term workload conditions, the Court concludes he was not. He simply was an employee of Page's who worked irregular hours.[8] The Court holds that Parker was not a temporary worker under the policy. Consequently, the employee exclusion applies, and American Safety therefore has no duty to defend or indemnify Page's in Parker's negligence suit. American Safety is thus entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that American Safety's motion for summary judgment motion is **GRANTED**, the two motions to exclude experts are **MOOT**, and Parker's motion for leave to file a sur-reply is **DENIED**.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**August 22, 2016**
**Charleston, South Carolina**

---

7. In addition, Page's and Parker seem to argue that under South Carolina law, the mere existence of an ambiguity would require the Court to rule in their favor. In *Canal Insurance*, then-Chief Judge Few took precisely that position in a separate concurrence. *See* 777 S.E.2d at 424–25. The majority rejected his position, stating that under South Carolina's "longstanding jurisprudence regarding the interpretation of insurance policies," the court was required to choose a definition of an ambiguous term and then make a coverage determination by applying that definition to the facts. *Id.* at 264 n.6. Thus, even if "short-term workload conditions" was ambiguous, the Court fails to see what reasonable construction of that phrase it could adopt that would afford coverage for someone who worked frequently, and was on retainer, for at least two years.

8. In light of this conclusion, the Court does not address whether Parker was "furnished to" Page's. *See Canal Insurance*, 777 S.E.2d at 421 (indicating courts should consider that element of the temporary-worker definition only if they first conclude that the injured worker is a substitute, seasonal, or short-term worker).